JOSEPH SETTE ET AL. *v.* NICK DAKIS

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued May 7—decided June 12, 1946

*Martin E. Gormley* and *Joseph M. Brandon,* for the appellant (defendant).

*Bernard Greenberg,* for the appellee (named plaintiff), with whom were *John E. McNerney* and, on the brief, *Francis J. Moran,* for the appellee (intervening plaintiff Laconia Baking Company).

BROWN, J. This is an action for damages for personal injuries sustained by the named plaintiff by falling through an open trap door in the floor of the defendant's restaurant. These material facts appear in the finding as corrected: On June 5, 1943, the defendant owned and operated a restaurant in New Haven. A counter, with stools in front for patrons, extended along the wall to the left as one entered. Between the front of cupboards attached to this wall and the counter was an aisle about two feet wide, used by the counterman in serving customers. About midway in the counter was an opening providing a passway to this aisle. In the floor of the aisle near the end, at the rear of the restau-

rant and eight feet nine inches from the opening, was a trap door three feet nine inches long and two feet two inches wide. It was fifteen inches from the counter and opened back against the wall, where it could be fastened by a wooden latch. Unless so fastened it would not stay open. A steep stairway led from the rear edge of the trap doorway to the cellar floor eight feet five inches below. To the rear of this doorway there was a chain attached to the counter which could be suspended across the aisle to exclude people from the trap-door area, and there was a similar chain in front of it.

For nearly two years the plaintiff had delivered bread and rolls to the defendant's restaurant every morning shortly after 4 o'clock, depositing them in compartments under the counter opposite the trap door. The defendant's counterman, Polinos, who was always on duty when the plaintiff called, knew that the plaintiff did this as he had been directed. He also knew the course which the plaintiff regularly followed in so doing. On June 5, 1943, Polinos saw the plaintiff enter the restaurant carrying one carton on his shoulder and holding another in front of him. While the plaintiff was proceeding as usual along the front of the forward portion of the counter toward the opening, Polinos was approaching from beyond the trap door along the aisle behind the rear portion of the counter and, as they met at the opening, stepped into the aisle behind the forward portion to let the plaintiff pass. No warning was given the plaintiff that the trap door was open and neither of the guard chains was in place. He passed Polinos, proceeded along the aisle toward the rear of the restaurant and fell through the open trap door onto the basement floor, receiving the in-

juries complained of. Prior to his fall he had no knowledge of the existence of the trap door.

Shortly before the plaintiff arrived at the restaurant Polinos had opened the trap door to permit Goldberg, another baker, to enter the basement to get some boxes and had closed the door after him. A few minutes later Goldberg rapped on the door with a stick to indicate his desire to come out. Polinos heard the rap and at the time saw the plaintiff approaching about halfway down the forward portion of the counter. This was a minute before the plaintiff fell, and Polinos had walked over the trap door while bringing coffee from the rear of the restaurant. Goldberg did not open the trap door.

The court concluded that the plaintiff was not guilty of contributory negligence; that Polinos opened the trap door and therefore the defendant was liable for his negligence in failing either to put up the guard chain or to warn the plaintiff; and that this negligence was the proximate cause of the plaintiff's fall and injuries. The defendant has assigned error in these conclusions. Only the attack on the conclusion as to the defendant's negligence merits discussion. Concerning this, the defendant's contention is restricted to the claim that the court's inference that Polinos opened the trap door a moment before the plaintiff fell was unwarranted. The defendant makes no claim and there is no evidence that anyone other than Polinos or Goldberg could have opened the door. The court's finding that Goldberg did not open it, which is supported by his explicit testimony, eliminated the latter possibility. Since the finding establishes that Polinos, the only other person who could have opened it, had the opportunity at the time in question, the court's

inference that he did so was reasonable and its conclusion cannot be disturbed. *Genishevsky* v. *Fishbone,* 109 Conn. 58, 60, 145 A. 54; *Esserman* v. *Madden,* 123 Conn. 386, 388, 195 A. 739; *Naumann* v. *Wehle Brewing Co.,* 127 Conn. 44, 46, 15 A.2d 181; *LeBlanc* v. *Grillo,* 129 Conn. 378, 382, 28 A.2d 127. The court did not err in concluding that the defendant is liable.

The defendant has also assigned error in the court's conclusion that the plaintiff was entitled to $3500 for pain and suffering as a part of the total of $5052.40 damages awarded. By his fall the plaintiff's arms, shoulders and elbows were bruised and his back was injured, but these injuries had cleared up before trial. X-rays showed that he also sustained a chip fracture of the tibial spines of the right knee joint and a possible tear of the internal semilunar cartilage. From June 5 until June 28 the plaintiff continued to work part time and his knee was given daily heat treatments by his doctor. On June 28, 1943, his right leg was placed in a cast for four weeks, during which time he remained at home. On September 15, an orthopedic specialist found moderate swelling of the knee, an occasional click on motion, pain and a limping walk. He advised a brace, which the plaintiff has ever since worn and without which he cannot work. On December 7, the specialist advised an operation on the knee, at a total expense of about $280, which would have disabled the plaintiff for six weeks. Without this operation the knee cannot be restored to its previous condition. From the date of his fall until the time of trial the plaintiff continued to suffer pain in his knee which disturbed his sleep and caused him to lose twenty-five pounds in weight. He had no such pain before the accident. On June 26, 1945,

tenderness over the internal semilunar cartilage still persisted. The plaintiff's doctor had continued to treat him for his injuries.

In addition to the facts above summarized, the court by its express findings disallowed the amounts expended by the plaintiff for treatments subsequent to January, 1944, on the ground that need for them would have been obviated had the plaintiff submitted to the operation advised, but did allow for the expense of this operation and for the six weeks' disability which it would entail. This finds warrant in the "rule of general application that one who has been injured by the negligence of another must use reasonable care to promote recovery and prevent any aggravation or increase of the injuries. *Flint* v. *Connecticut Hassam Paving Co.*, 92 Conn. 576, 578, 103 A. 840." *Lange* v. *Hoyt*, 114 Conn. 590, 595, 159 A. 575; see also *Potts* v. *Guthrie*, 282 Pa. 200, 127 A. 605; *Hendler Creamery Co.* v. *Miller*, 153 Md. 264, 138 A. 1. While the court has failed to find that the operation advised by the plaintiff's specialist would have restored his knee to a relatively normal condition, it is implicit in the facts which it did find, as recited in the first sentence of this paragraph, that it concluded that the plaintiff should have submitted to such an operation and that this would at least have given him the benefit of all that could be accomplished through treatment by doctor or surgeon. However, the court, as was its right upon the evidence; by refusing to make the further finding requested by the defendant that the operation would have resulted in "clearing up the condition," has eliminated any basis for the defendant's claim that there would have been no further pain or suffering by the plaintiff after he had had the benefit of the operation. In short then, as a result

of the accident, the plaintiff had continued for more than two years and up to the time of trial to suffer pain severe enough to disturb his sleep and to cause a loss of twenty-five pounds in weight, and this was suffering which the court has refused to find would have been mitigated by an operation. Damages for pain and suffering cannot be computed mathematically, nor does the law furnish any precise, definite rule for their assessment. The matter is peculiarly one within the province of the trier, whose determination will be set aside only when it appears that the sum awarded is plainly excessive. *Samaha* v. *Mauro,* 104 Conn. 300, 302, 132 A. 455. Under the circumstances we cannot hold that the court erred in awarding the plaintiff $3500 for pain and suffering.

There is no error.

In this opinion the other judges concurred.