This is an action in nuisance and negligence for damages for the pollution of the plaintiffs' well. The jury returned a verdict of $4359.75, which the defendant seeks to have the court set aside on the grounds it is against the law and the evidence and is excessive.
The plaintiffs own a dwelling on the southeasterly side of Main Street, in the village of Moosup, town of Plainfield. They got water for domestic purposes from a well upon their property. The defendant owns a gasoline station located on the northwesterly side of Main Street, across the street from the plaintiffs' property. The defendant leased the real estate and equipment in the station to a third party but continued to maintain and repair the gasoline tanks, which were buried in the grounds in front of the station adjoining Main Street.
Early in January, 1951, the defendant installed a new 1000-gallon underground tank. Within approximately one and one-half feet of this tank there was already a 500-gallon tank in the ground. It had been there prior to 1941. This tank was used for the storage of high-test gasoline containing tetraethyl lead, a poisonous substance, making it hazardous for human use or contact. The plaintiffs offered the expert testimony of a chemist that this type of gasoline, which was found in the well, would cause serious injuries to the human body if spilled upon the skin. For these reasons it contained a dye, red or pink in color, to distinguish it. These tanks, after installation, were connected to the service pumps for retail sale to motorists.
Shortly thereafter, the plaintiff, Arthur J. Blais, smelled gasoline in his drinking water inside the house. Going outside he smelled gasoline fumes from the well. About the same time the gasoline station *Page 148 
operator got complaints from customers that their cars were freezing up because of water in the gasoline. Thereafter, a contractor hired by the defendant worked for a period of eight days to pump the gasoline out of the well to purify the water. He could not do so and abandoned the task.
The top of the well was about nine feet below the surface of the gasoline station property. The ground sloped naturally from the latter property down past the Blais property easterly to the Moosup River, dropping fifty feet below the station property. The next nearest station to the plaintiffs' well was a quarter of a mile away. The subsurface of the land consisted of hardpan. About the bottom of the well was rock formation which had been fractured and accounted for several hundred gallons of gasoline remaining near the flow of water into the well.
The jury could reasonably have found from the topography and contour of the land, the proximity of the station, the freezing of the defendant's customers' cars at about the same time the gasoline leaked into the well, the similar characteristics of defendant's gasoline and that found in the well and other events that the reddish tetraethyl gasoline found in the well came from the 500-gallon tank of the defendant. Doherty v. Connecticut Co., 133 Conn. 469,473.
As to the negligence alleged in paragraph five of the complaint, the plaintiffs may recover provided "the injury ... is under the circumstances naturally to be expected or is known or should have been known in the exercise of reasonable foresight.... To deny to a landowner a right to make a certain use of his property because of a mere possibility that the water percolating from it to the land of another may be polluted to the injury of that other would unjustifiably restrict property rights. Unless and until the landowner knows or should know that his use of his *Page 149 
land will cause injury to another he should not be fettered in his right to enjoy it." Swift Co. v.Peoples Coal Oil Co., 121 Conn. 579, 587; 109 A.L.R. 406.
We are not limited in Connecticut, however, to recovery for such injury upon the mere ground of negligence. If the pollution constitutes a nuisance, it is immaterial whether or not the adjoining proprietor exercised reasonable care or foresight in the conduct of his business. Liability may exist where the use of the property is not in any respect negligent.Swift Co. v. Peoples Coal Oil Co., supra, 588.
The jury were fully instructed as to liability for negligence and nuisance. They returned a general verdict for the plaintiffs. The defendant did not request that the jury be required to state upon which theory their verdict was based. "As the verdict was a general one, the legal presumption is that the jury found all the issues for the defendant." Beauton v.Connecticut Light Power Co., 125 Conn. 76, 83. The jury could reasonably have found for the plaintiffs on the issue of creation of a nuisance by the defendant. This would suffice to support the verdict.Bradley v. Niemann, 137 Conn. 81, 83.
After almost two years the plaintiffs were compelled to drill a new well on the opposite side of the dwelling. They paid R. E. Chapman Company $1604 to drill the well and R. Bourque $569 for the required plumbing. After interest was added to these amounts, approximately $2000 was awarded the plaintiffs for their pain and suffering. This does not seem to be unreasonable for the amount of time the two plaintiffs endured the effects of the pollution. They testified that they lost weight, suffered insomnia and were extremely nervous during this time. They had to carry water for drinking and domestic purposes from across the street. When hot water *Page 150 
was used for washing, the fumes from gasoline were almost unbearable. Even the small jar of tetraethyl gasoline which was admitted in evidence, when smelled, demonstrated the harsh effects to the nostrils. The jury had this in evidence, together with the testimony, and could reasonably have concluded that the plaintiffs suffered the effects as claimed. The plaintiffs offered no doctor, hospital or other bills by way of proving special damages. Mental suffering, however, is compensable and the jury could reasonably consider that the anxiety and nervous state of the plaintiffs was a proximate result of the pollution of the well. Thompson v. Lupone,135 Conn. 236, 239. "Damages for pain and suffering cannot be computed mathematically, nor does the law furnish any precise, definite rule for their assessment. The matter is peculiarly one within the province of the trier...." Sette v. Dakis, 133 Conn. 55,61. The verdict was not excessive.
 The motion to set aside the verdict is denied.