# George Futterleib et al. *v.*
# Mr. Happy's, Inc., et al.
## (5782)

Borden, Daly and Norcott, Js.

Argued May 10—decision released October 4, 1988

*Kenneth B. Katz,* for the appellant (defendant Trepid Fox, Inc.).

*Ronald E. Cassidento,* with whom, on the brief, were *Eric Carlson* and *Jeffrey A. Gutin,* law student intern, for the appellees (plaintiffs).

DALY, J. The plaintiffs, George and Marcia Futterleib, instituted these consolidated actions against the defendants, Douglas Medina, Mr. Happy's, Inc., and Trepid Fox, Inc., for their gross negligence and wanton and reckless conduct in dispensing alcoholic beverages to an intoxicated person and for their violation of General Statutes § 30-102.[1] From the judgment rendered upon a jury verdict in favor of the plaintiffs against the defendant Trepid Fox, Inc., this appeal ensued.[2]

The defendant claims that the trial court erred in the following manner: (1) in failing to charge on a party's duty to mitigate damages; (2) in precluding the defendant from making an offer of proof relating to mitigation of damages; (3) in disallowing into evidence a pleading in a companion matter; (4) in failing to instruct

[1] General Statutes § 30-102 (a) provides in pertinent part: "If any person, by himself or his agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured, up to the amount of twenty thousand dollars . . . ."

[2] The action against Douglas Medina was withdrawn before the verdicts. It was stipulated that Mr. Happy's, Inc., was not a party to this appeal. We refer herein to Trepid Fox, Inc., as the defendant.

the jury adequately on proximate cause; (5) in denying the defendant's motion in limine regarding an intoximeter test; (6) in denying the defendant's motion for a directed verdict; (7) in denying the defendant's motion to set aside the verdict; and (8) in improperly charging the jury concerning the $20,000 damage limitation prescribed under General Statutes § 30-102.

The plaintiffs, in their preliminary statement of issues, claim that the trial court erred in granting the defendant's motion to strike the plaintiff's count brought under the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a. Since the plaintiffs have failed to comply with Practice Book § 4005 relating to the filing of a cross appeal in this matter, we need not consider this claim.

The jury could reasonably have found the following facts. On December 5, 1983, Douglas Medina and James Mosakowski left their place of employment in Waterbury and proceeded in separate vehicles to Mr. Happy's, a Waterbury bar that features exotic dancers. There the two drank both beer and several shots of liquor. After approximately two hours at Mr. Happy's, Mosakowski and Medina proceeded to the Trepid Fox, a bar approximately two miles away. At the Trepid Fox, Medina drank beer and several shots of tequila. He and Mosakowski were treated to a round of shots by a bartender at the Trepid Fox and by one of the dancers. Mosakowski observed Medina swaying back and forth while standing at the bar and noticed that Medina was having some difficulty standing. In addition, Mosakowski observed that Medina was staggering. At no time did any employee of the Trepid Fox refuse to serve Medina or ask him to leave, despite his being observed "biting the bar," which the jury could have interpreted as his head dropping and contacting the top of the bar.

Medina could not recall at what time he left the Trepid Fox but subsequently thought that he had stopped drinking about 5:30 p.m. Shortly after 6 p.m., his truck emerged from a McDonald's restaurant driveway without stopping and proceeded to halt and block the traveled lane. William Huber, whose vehicle came within six inches of Medina's truck, observed that Medina looked "real drunk," stating that Medina's elbow was on the window, his head was resting on his shoulder and his face was red.

At about 6:23 p.m., the plaintiffs were proceeding northerly on Wolcott Road in Wolcott approximately two to three miles from the Trepid Fox. Medina's truck, which was proceeding in a southerly direction, swerved into the oncoming lane and collided with the plaintiffs' vehicle. Upon arrival at the scene, Wolcott police officer John Gagain observed Medina swaying and staggering. Gagain also noticed that Medina's speech was slurred and detected a strong odor of alcohol on his breath. Medina admitted to having a few beers and subsequently failed the sobriety tests administered at the scene. An examination of the cab of his truck revealed an eight pack of beer bottles, four empties and four unopened ones. Additionally, twenty empty beer containers were also found in the cab. An intoximeter test, administered at the Wolcott police department one hour and twenty-five minutes later, indicated that Medina was highly intoxicated with a .225 percent blood alcohol content.

As a result of the collision, the plaintiffs sustained serious injuries. The named plaintiff suffered, inter alia, a fracture of the left hip. Kevin Dowling, an orthopedist, recommended a total hip replacement procedure, which entailed joint replacement and bone grafting. The patient, however, refused this procedure. Dowling indicated that the hip replacement surgery as recommended would not only have enabled the named

plaintiff to walk without crutches, but would have reduced the pain and disability as well. Timothy Wallace, a pain specialist and psychologist, opined that the pain might not have been eliminated by the surgery.

The jury returned a verdict in favor of the named plaintiff in the amount of $20,000 in the dram shop action and $500,000 on the common law complaint. Additional verdicts were entered in favor of Marcia Futterleib for $10,000 in her dram shop action and $60,000 on her common law complaint.

I

In the defendant's first claim of error, it argues that the trial court erred in failing to charge on a party's duty to mitigate damages. Specifically, the defendant asserts that it was error for the court to refuse to instruct the jury on the duty to mitigate when there was evidence, produced at trial, to support the defendant's request. The defendant argues that the named plaintiff's decision not to pursue the recommended joint replacement and bone grafting advised by his doctor was sufficient evidence of a failure to use reasonable care to mitigate his damages. We agree.

"It has long been a ' "rule of general application that one who has been injured by the negligence of another must use reasonable care to promote recovery and prevent any aggravation or increase of the injuries." ' Sette v. Dakis, 133 Conn. 55, 60, 48 A.2d 271 [1946]. When there are facts in evidence that indicate that a plaintiff may have failed to promote his recovery and do what a reasonably prudent person would be expected to do under the same circumstances, the court, when requested to do so, is obliged to charge on the duty to mitigate damages." Jancura v. Szwed, 176 Conn. 285, 288, 407 A.2d 961 (1978); see also Geer v. First National Supermarkets, Inc., 5 Conn. App. 175, 178, 497 A.2d 999 (1985).

In the present case, there was evidence from Dowling, the named plaintiff's doctor, that the joint replacement and bone grafting would enable the named plaintiff to walk without crutches, that the pain would be reduced, and that there would be a reduction in his disability. Moreover, Dowling testified that the decision whether or not to elect the recommended surgery was with the named plaintiff and that there was nothing gained by delaying surgery. In view of Dowling's testimony that supported the defendant's request to charge, the trial court committed error in not charging on the named plaintiff's duty to mitigate.

## II

The defendant next claims that the trial court erred in precluding the defendant from making an offer of proof on the plaintiffs' failure to use seatbelts. In making this claim, however, the defendant merely assumes, without legal argument on the matter, that such evidence would have been relevant to the issue of mitigation. The underlying issue of how the use of seatbelts would have mitigated damages, which is necessary to the resolution of the issue, is not briefed. In the absence of any legal argument on this issue, we will not address the merits of the defendant's claim. See *Hawkins* v. *Hawkins,* 11 Conn. App. 195, 198 n.1, 526 A.2d 872 (1987); *Griffin* v. *Muzio,* 10 Conn. App. 90, 94, 521 A.2d 607 (1987).

In reaching this decision, we first note that the accident in this case occurred in 1983, two years prior to the legislature's adoption of General Statutes § 14-100a (4) which provides: "Failure to wear a seat safety belt shall not be considered as contributory negligence nor shall such failure be admissible evidence in any civil action." Accordingly, the provisions of § 14-100a (4) are not applicable to this case. Next, we note that, in the absence of a statute dealing with the issue, it is far from

clear that evidence of the failure to use seatbelts can be introduced to show either the failure to mitigate damages or contributory negligence. Neither our Supreme Court nor this court have addressed this issue. See *Wassell* v. *Hamblin,* 196 Conn. 463, 467–68 n.3, 493 A.2d 870 (1985). The trial bench is quite divided on the issue. Trial court decisions rejecting the seatbelt defense as it relates to mitigation of damages include *Delumba* v. *Magda,* Superior Court, judicial district of Stamford-Norwalk, Docket No. CV840073370S (October 31, 1985); and *Jemison* v. *Lowe,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 284839 (June 6, 1985). Trial court decisions holding that the seatbelt defense is allowable for mitigation of damages include *Fiore* v. *Wilson,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 241653 (May 27, 1980); *Ceforetti* v. *Elkins,* Superior Court, judicial district of Waterbury, Docket No. 048496 (November 29, 1979). Because this issue is so unclear, we will not consider the defendant's claim in the absence of proper legal argument on the viability of the seatbelt defense as applied to claims arising before the effective date of General Statutes § 14-100a (4).

## III

In the third claim of error, the defendant argues that trial court erred in precluding the admission of pleadings constituting evidentiary admissions in a companion case. We disagree.

The facts relating to this claim are as follows. The plaintiffs had instituted an independent cause of action against Medina alleging that he was negligent in the operation of his automobile. Medina had responded to that allegation by raising the special defense that the cause of the accident was the named plaintiff's negli-

gent operation of his own automobile. Prior to trial, however, the complaint against Medina was withdrawn.

At trial, the defendant sought to introduce evidence that the suit against Medina was withdrawn. Such evidence, they claimed, related to Medina's credibility because it tended to show bias. The trial court disagreed and excluded the evidence. Thereafter, the defendant sought to introduce the pleadings filed in the suit against Medina, claiming that the special defense raised by Medina was admissible to show that the plaintiffs were at fault. The trial court again disagreed and excluded the evidence.

On appeal, the defendant claims that the special defense raised by Medina in the suit brought by the plaintiffs constituted a judicial admission that was substantively admissible to show that the plaintiffs were at fault in the car accident. We disagree.

A judicial admission is " '[a]n express waiver, made in court or preparatory to trial, by the party or his attorney, conceding for the purposes of the trial the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted; so that the one party need offer no evidence to prove it, and the other is not allowed to disprove it. . . . It is, in truth, a substitute for evidence, in that it does away with the need for evidence.' 9 Wigmore, Evidence (3d Ed.) § 2588." *State* v. *Rodriguez,* 180 Conn. 382, 396, 429 A.2d 919 (1980); see also B. Holden & J. Daly, Connecticut Evidence § 103. Our Supreme Court has held that statements by a party in withdrawn or superseded pleadings may constitute judicial admissions. *Dreier* v. *Upjohn Co.,* 196 Conn. 242, 244, 492 A.2d 164 (1985). A statement in a withdrawn or superseded pleading, however, only qualifies as a judicial admission if it is made by a party to the action in which it is sought to be used. *Kucza* v. *Stone,* 155 Conn.

194, 197, 230 A.2d 559 (1967). Here, it is clear that Medina was not a party in the case that was tried to the jury. Accordingly, his statements in a totally unrelated suit could not constitute judicial admissions.

## IV

In the fourth claim of error, the defendant argues that the trial court erred in its charge to the jury regarding the proximate cause of the plaintiffs' injuries. Specifically, the defendant claims error in that the trial court failed to charge the jury according to *Boehm* v. *Kish,* 201 Conn. 385, 517 A.2d 624 (1985). We find no error.

The factual basis of *Boehm* v. *Kish,* supra, differs from the case at hand and we, therefore, hold that the charge given in *Boehm* is not applicable to this case. In *Boehm,* the plaintiff instituted a dram shop action against the defendant bar owner and bartender, alleging gross negligence and wanton and reckless conduct in the service of alcohol. The plaintiff was involved in a one car accident after leaving the defendant bar. The trial court directed a verdict in favor of the defendants, holding that there was not sufficient evidence to explain the cause of the accident. Since it was a one car accident and the operator was unable to remember how the accident occurred, the court concluded that any number of causes may have been the proximate cause. In the present case, we have direct evidence as to the cause of the collision of Medina and the plaintiffs. There was testimony by Fran Korowlotny, an eyewitness to the accident, that Medina swerved into the lane in which the plaintiffs were driving. Additionally, there is testimony of the named plaintiff that he saw Medina swerve into his lane, causing the accident. On the basis of this direct testimony, viewed in light of all the evidence presented, including the testimony of Medina's conduct in the bar and when leaving McDonald's, the

trial court was correct in not charging as the court did in *Boehm* v. *Kish,* supra. The trial court charged: "A proximate cause is a direct cause. It is an act or failure to act followed in the natural sequence by a result without the intervention of any other superseding cause. Where the sequence of events is unbroken by any intervening cause an act or failure to act is a proximate cause of the result. Proximate cause is thus an act or failure to act which is a substantial factor to produce a result." This charge adequately covered the issue of proximate cause.

## V

The defendant next claims that the trial court erred in denying its motion in limine regarding the results of an intoximeter test administered to Medina. The motion was based on the case of *State* v. *Crepeau,* Superior Court, judicial district of New Haven at Meriden, Docket No. MV7-25228 (May 26, 1983), in which the trial court held that the lack of publication in the Connecticut Law Journal made void the approval by the commissioner of health services of the Intoximeter 3000. The defendant argues that the results of the blood alcohol level test of Medina should have been excluded from evidence because the Intoximeter 3000, the device used to measure Medina's blood alcohol content, was not approved in conformity with General Statutes § 4-168. Moreover, the defendant contends that the trial court erred in solely relying on the publication aspect of the decision in *State* v. *Crepeau,* supra. We find that the defendant's argument is without basis.

It is noteworthy that the defendant does not challenge the reliability of the Intoximeter 3000. The purpose of a motion in limine is for a party to prohibit, in advance, evidence from being admitted into evidence. It is, in essence, similar to a motion to suppress. See C. Tait & J. LaPlante, Connecticut Evidence § 2.6 (1986

Supp.). The trial court's ruling denying the motion in limine, although correct, was based on the wrong reasons.

This is a civil case, albeit one involving an intoxicated driver. The defendant mistakenly argues that the provisions in General Statutes § 14-227a are applicable to this case. In *State* v. *Singleton,* 174 Conn. 112, 115–16, 384 A.2d 334 (1974), our Supreme Court held that the procedural requirements of § 14-227a regarding admissibility of blood tests apply only to prosecutions under that statute. In *Singleton,* the blood alcohol test results were admissible because it was a prosecution charged under General Statutes § 53a-57. If the procedural requirements of § 14-227a do not apply to a criminal prosecution under § 53a-57, a fortiori, they do not apply to this civil case. See also *State* v. *LeRoy,* 16 Conn. App. 472, 477, 547 A.2d 940 (1988); *State* v. *Shaw,* 12 Conn. App. 294, 298, 530 A.2d 653 (1987).

## VI

The next assignment of error involves the trial court's denial of the defendant's motion for a directed verdict. "The general rule in Connecticut is that a trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion." *Petyan* v. *Ellis,* 200 Conn. 243, 244, 510 A.2d 1337 (1986). *Daley* v. *Gaitor,* 16 Conn. App. 379, 384, 547 A.2d 1375 (1988), citing *Meizoso* v. *Bajoros,* 12 Conn. App. 516, 518, 531 A.2d 943 (1987). As our Supreme Court has stated: "A directed verdict is justified if on the evidence the jury could not reasonably and legally reach any other conclusion than that embodied in the verdict as directed; id.; *McDonald* v. *Connecticut Co.,* 151 Conn. 14, 17, 193 A.2d 490 (1963); or if the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party. *Mott* v. *Hillman,* 133 Conn. 552, 555, 52 A.2d 861 (1947)."

*Boehm* v. *Kish,* supra, 389. In reviewing the action of the trial court the evidence must be considered in a light most favorable to sustaining the verdict and every reasonable presumption should be in favor of the verdict. *Kegel* v. *McNeely,* 2 Conn. App. 174, 177, 476 A.2d 641 (1984). The defendant's motion for a directed verdict was based on the grounds that the evidence was insufficient as to Medina's intoxication, and as to the defendant's wanton and reckless misconduct. We find that the trial court did not err in denying the motions as to both the statutory and common law counts.

A review of the facts in the light most favorable to sustaining the verdict indicates that the trial court properly denied the motion for a directed verdict. In reviewing this claim we will first examine the defendant's assertion that there was insufficient evidence as to Medina's intoxication. The defendant properly appears to concede that an inference as to Medina's intoxication at the scene of the accident might be drawn. The defendant argues, however, that one cannot infer that Medina's intoxication resulted from his activities in the Trepid Fox. To determine whether Medina was intoxicated we look to the definition provided in *Sanders* v. *Officers Club of Connecticut, Inc.,* 196 Conn. 341, 349–50, 493 A.2d 184 (1985); see also *State* v. *McKenna,* 11 Conn. App. 122, 127, 525 A.2d 1374, cert. denied, 205 Conn. 806, 531 A.2d 939 (1987). In *Sanders,* our Supreme Court stated: "To be intoxicated is something more than to be merely under the influence of, or affected to some extent by, liquor. Intoxication means an abnormal mental or physical condition due to the influence of intoxicating liquors, a visible excitation of the passions and impairment of the judgment, or a derangement or impairment of physical functions and energies. When it is apparent that a person is under the influence of liquor, when his manner is unusual or abnormal and is reflected in his walk or conversation,

when his ordinary judgment or common sense are disturbed or his usual will power temporarily suspended, when these or similar symptoms result from the use of liquor and are manifest, a person may be found to be intoxicated. He need not be 'dead-drunk.' It is enough if by the use of intoxicating liquor he is so affected in his acts or conduct that the public or parties coming in contact with him can readily see and know this is so." Id. (Footnote omitted). From the evidence presented, the jury could reasonably have inferred that Medina was intoxicated while at the Trepid Fox when the defendant continued to serve him alcohol, and thus his intoxication at the time of the accident resulted, at least in part, from his activities at the Trepid Fox. Medina himself testified that he was at the Trepid Fox drinking shots of tequila that the bartender was serving him, that the bartender in fact bought him a shot, and that he could not remember how many shots he imbibed because he was intoxicated. Moreover, the jury heard the testimony of Mosakowski that established that Medina was swaying, was having difficulty in standing, was staggering, and was "biting the bar." This display of behavior would certainly indicate to anyone observing or in contact with Medina that he was, in fact, intoxicated.

We next look at whether there was sufficient evidence to find that the defendant's actions constituted wanton and reckless misconduct. With every reasonable presumption in favor of the verdict, we conclude that the defendant's conduct of continuing to serve alcohol to Medina, who was already obviously intoxicated, was sufficient for the jury to find reckless and wanton misconduct by the defendant. Our Supreme Court has provided us with a working definition of reckless and wanton misconduct. "The reason that intentional and reckless misconduct are treated the same is that the difference between the two in a conceptual

sense is microscopic. 'Wanton misconduct is more than negligence, more than gross negligence. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of action. Wilful misconduct is intentional misconduct, and wanton misconduct is reckless misconduct, which is the equivalent of wilful misconduct.' *Menzie* v. *Kalmonowitz,* 107 Conn. 197, 199, 139 A.2d 698 (1928)." *Kowal* v. *Hofher,* 181 Conn. 355, 361–62, 436 A.2d 1 (1980); see also *Gionfriddo* v. *Gartenhaus Cafe,* 15 Conn. App. 392, 394, 546 A.2d 284 (1988).

In this case, the jury could reasonably have inferred (1) that Medina was intoxicated while at the Trepid Fox, (2) that Medina's intoxicated state was readily apparent to anyone observing or in contact with him, and (3) that the defendant continued to serve alcoholic beverages to Medina while he was obviously intoxicated. The jury could reasonably have inferred these conclusions from both Medina's and Mosakowski's testimony. As we described above, Mosakowski's observations of Medina established that Medina was intoxicated. Moreover, Mosakowski testified that the defendant continued to serve Medina, while in his obviously intoxicated state, and that at no time did anyone at the bar stop serving Medina before he left.[3]

## VII

In its seventh claim of error, the defendant argues that the trial court erred in denying the defendant's

[3] In direct examination, Mosakowski was asked the following questions:
"Q: All right. Were you standing at the bar with him?
"A: Yes, sir.
"Q: All right. Would you describe him standing at the bar for the judge and jury, was he able to do it?
"A: Before he left?
"Q: Yes.
"A: He was able to stand, but he was having a hard time doing so.
"Q: What do you mean by that?

motion to set aside the verdict. The defendant bases this claim on the grounds that there was insufficient evidence to show reckless misconduct. We find the defendant's argument is meritless.

"In sum, '[a] trial court's refusal to set aside a verdict is entitled to great weight and every reasonable presumption in favor of its correctness must be given. *Katsetos* v. *Nolan,* 170 Conn. 656, 368 A.2d 172 (1976). The refusal to set aside a verdict will not be disturbed unless it appears there has been a clear abuse of discretion. *Birgel* v. *Heintz,* 163 Conn. 23, 27, 301 A.2d 249 (1972).' *Pitter* v. *Grippo,* 177 Conn. 398, 400, 418 A.2d 60 (1979)." *Sanders* v. *Officers Club of Connecticut, Inc.,* supra, 352; see also B. Holden & J. Daly, Connecticut Evidence § 35. The evidence in the record, without repeating it, is sufficient to sustain the jury's verdict. The trial court did not err in denying the motion to set aside the verdict.

## VIII

In the final claim of error, the defendant argues that the trial court erred in instructing the jury on the $20,000 damages limitation under General Statutes § 30-102. See footnote 1, supra. Specifically, the defendant contends that the instruction was irrelevant and prejudicial. The defendant claims that as a result of the instruction the jury returned a verdict inconsistent with the instruction, because Marcia Futterleib received an award of only $10,000 in her dram shop action and an additional

---

"A: Well he was standing swaying back and forth, sir.

"Q: While he was at the bar?

"A: Yes, sir.

"Q: Did he continue to drink while he was swaying at the bar?

"A: Yes, sir.

"Q: Did anybody from the Trepid Fox stop serving you before Medina and you left the bar?

"A: No sir."

$60,000 in her reckless misconduct action. Furthermore, the defendant adds that the trial court should have stressed that damages were to be measured by just and fair compensation. We do not find the defendant's argument to be correct.

"In determining whether the court erred in its charge, the charge must be read as a whole and the instructions claimed to be in error read in that context. *Giglio* v. *Hamilton Heights, Inc.,* 1 Conn. App. 165, 167, 469 A.2d 416 (1984), citing *Matthews* v. *F.M.C. Corporation,* 190 Conn. 700, 704, 462 A.2d 376 (1983). Jury instructions need not be exhaustive, perfect or technically accurate so long as they are correct in law, adapted to the issues and sufficient for the guidance of the jury. *State* v. *Storlazzi,* 191 Conn. 453, 464, 464 A.2d 829 (1983); *Castaldo* v. *D'Eramo,* 140 Conn. 88, 94, 98 A.2d 664 (1953); *State* v. *Heinz,* 1 Conn. App. 540, 549, 473 A.2d 1242 (1984). The adequacy of the instructions must be determined in the light of their overall impact on the jury. *State* v. *Truppi,* 182 Conn. 449, 458, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981); *State* v. *Lenczyk,* 1 Conn. App. 270, 271, 470 A.2d 1240 (1984). The charge must be examined to determine whether it fairly presents a case to a jury and is not to be subject to a degree of scrutiny that is tantamount to a microscopic examination seeking technical flaws, inexact, inadvertent or contradictory statements. *Ubysz* v. *DiPietro,* 185 Conn. 47, 57, 440 A.2d 830 (1981); *Tripp* v. *Anderson,* 1 Conn. App. 433, 436, 472 A.2d 804 (1984)." *Carfora* v. *Globe, Inc.,* 5 Conn. App. 526, 530, 500 A.2d 958 (1985).

Although the trial court did charge that in relation to the Dram Shop Act liability "the maximum recovery for any one plaintiff, should you find for the plaintiff is $20,000 for each," it also stressed that "you will observe the rule or keep in mind the rule that I have

given that the rule there is a *fair, just* and *adequate* or *reasonable damages* for each of the plaintiffs should you find liabilities in that they are entitled to damages as against either one of the defendants, Mr. Happy and/or Trepid Fox." (Emphasis added.)

While the trial court should have followed the procedure suggested in *Sanders* v. *Officers Club of Connecticut, Inc.,* supra, by accepting a verdict against the defendant, and thereafter reducing the damages in accordance with the $20,000 statutory limit under General Statutes § 30-102 and rendering judgment thereon, we find no harmful error in charging the jury on the statutory maximum. The verdict does not show that the jury was misled by the instruction. The trial court correctly reminded the jury as to fair, just and adequate or reasonable damages.

There is error in part, the judgment in favor of the plaintiff George Futterleib is set aside and the case is remanded for a new trial limited to the issue of damages.

In this opinion the other judges concurred.