[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (#107)
This is an action in two counts, breach of contract and fraud, brought by the plaintiff, the Southern Connecticut Gas Company, against the defendant, Vincent Ciarleglio, a real estate developer. The motion for summary judgment is addressed to the breach of contract claim in the first count only.
The document at issue is a letter from the plaintiff's employee, one Romeo Licto, dated July 16, 1984. The letter states in the first sentence "This letter and any accompanying rider(s) are a binding agreement between you and the Southern Connecticut Gas Company." Plaintiff's Exh. A. p. 1.
The substance of the agreement was that the plaintiff would install natural gas service to 17 building lots on Homeside Avenue in West Haven. It is noted that the letter of agreement, at paragraph 4, specifies that "[i]n the event of your failure to connect and utilize the gas-fired equipment necessary for those uses within six months following such installation, you agree to reimburse the Company upon demand for its cost to install such mains, services, meters and connections."
The period of time allowed by the contract elapsed; no connections were made. The plaintiff made demand for reimbursement CT Page 3171 without avail and this lawsuit resulted.
The plaintiff filed this motion for summary judgment July 6, 1990, and has provided affidavits and supporting documents. The defendant timely objects and offers a memorandum of law opposing summary judgment on two grounds, both addressed to liability rather than the measure of damages. The first ground of objection is that the defendant is illiterate: the second is that the contract is ambiguous as to a material term.
"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Wilson v. New Haven, 213 Conn. 277, 279 (1989).
Here the defendant claims an issue of fact in two particulars: (1) that the defendant is "unable to read and write English in any functional manner." (Aff. of Lawrence Constantini, p. 1); and (2) that a material term of the contract is ambiguous, in that paragraph 4 of the contract could be construed in two quite different ways. More specifically, the ambiguity argued for is that the defendant's obligation to reimburse the plaintiff may be interpreted to arise not six months after the installation of "mains and services" but rather six months after the installation of "gas-fired equipment" (Letter of Agreement, paragraph 4).
The defendant is precluded from contesting the validity of the contract, having earlier admitted its existence in his Answer to the Revised Complaint: "3) Denied as to the allegations set forth therein other than the parties entered into a contract which speaks for itself. . . ." Answer to Revised Complaint, March 22, 1990, p. 1.
As to the second ground of objection, the argument is that an ambiguity exists as to whether the defendant's reimbursement obligation ever ripened. Defendant's Memo in Opposition, p. 2. The alternate construction argued by the defendant required concluding that the parties intended the obligation to reimburse to be contingent not upon the completion of the plaintiff's performance, but on the occurrence of an event entirely within defendant's control (the connection and utilization of gas-fired equipment). Such a construction makes the defendant's promise to reimburse unenforceable by the plaintiff and thus illusory; the defendant need only delay the connection of the equipment indefinitely to prevent his obligation from ripening.
1. The Defendant is Estopped from Contesting the Existence of the Contract. CT Page 3172
The defendant in this case filed his answer on March 22, 1990. Among the allegations of the plaintiff's Revised Complaint (dated February 8, 1990) was the following:
 3. On July 16, 1984, Plaintiff and Defendant entered into a written contract by which they agreed that Plaintiff would install gas mains, services, meters, and connections to lots through 17 Homeside Avenue, West Haven, which were owned by the Defendant (the "Installation"). Plaintiff and Defendant further agreed that if Defendant failed to connect and utilize the gas fired equipment within six (6) months following the installation, Defendant would reimburse Plaintiff for its cost for installation.
Plaintiff's Revised Complaint, p. 2.
The defendant's Answer responds to Par. 3 of the Revised Complaint as follows:
 3) Denied as to the allegations set forth therein other than the parties entered into a contract which speaks for itself.
Defendant's Answer, p. 1.
The allegation of the defendant's lawyer that his client is illiterate can only be viewed as attacking the formation of the contract. The ostensible argument which must be implied from the memorandum in opposition is that the defendant did not know what he was signing. It is axiomatic that "[w]here a party realizes he has only limited information upon the subject of a contract, but treats that knowledge as sufficient in making the contract, he is deemed to have assumed the risk of a mistake." Pacelli Bros. Transportation, Inc. v. Pacelli, 189 Conn. 401, 408 (1983) (citation omitted).
The gravamen of the illiteracy argument is unilateral mistake, since there is no allegation of fraud by the plaintiff. It is a long standing rule that unilateral mistake will not violate a contract otherwise legal.
 The rule supported by the authorities is that if, in the expression of the intention of one of the parties to an alleged contract, there is error, and that error is unknown to, and unsuspected by, the other party, that which was so expressed by the one party and agreed to by CT Page 3173 the other is a valid and binding contract, which the party not in error may enforce.
17 Am. Jur 2d CONTRACTS, 146, p. 492 (citations omitted).
If a party had any objections to the provisions of a contract he signed, he should have refused to make it. Having executed it, his mouth is closed against any denial. Parish v. United States,75 U.S. (8 Wall) 489, 490 (1869).
Had the defendant wished to deny the making of the contract or the validity of his signature, his answer to the complaint was the proper place to do so. Conn. Practice Book 160 (rev'd to 1978, updated to Oct. 1, 1989). Instead he admitted in his Answer that "the parties entered into a contract which speaks for itself." Defendant's Answer, p. 1. "Where an issue is admitted on pleadings which are neither withdrawn, explained or modified, one issue is considered settled as a matter of law." West Haven Sound Development Corp. v. West Haven, 201 Conn. 305, 312-13
(1986). The defendant, having conceded the existence of the contract and entrusting its construction to the court, has made a judicial admission as to the validity of the contract, and is estopped by the record from denying it. See, e.g., Futterleib v. Mr. Happy's, Inc., 16 Conn. App. 497, 5040-5 (1988):
 A judicial admission is an express waiver, made in court or preparatory to trial, by the party or his attorney, conceding for the purposes of the trial the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted; so that the one party need offer no evidence to prove it, and the other is not allowed to disprove it.
Futterleib v. Mr. Happy's, Inc., 16 Conn. App. 497, 504-05 (1986) (citations omitted).
On the one hand the defendant is estopped by his own judicial admission from disputing the existence of the contract. On the other hand he will not be heard to complain of certain onerous terms, while claiming the benefit of others, due to unilateral mistake. See, e.g., Osborne v. Locke Steel Chain Co., 153 Conn. 527
(1966).
2. The Contract as Written is Not Ambiguous as to When Defendant's Obligation Ripened.
The defendant asserts that certain language in the contract is ambiguous. The language is in Paragraph 4 of the letter of CT Page 3174 agreement:
 "You agree to pay a charge of $0 for the cost of installing mains, services, meters and connections based upon the uses described on page 2 of this letter. In the event of your failure to connect and utilize the gas fired equipment necessary for those uses within 6 months following such installation, you agree to reimburse the company upon demand for its cost to install such mains, services, meters and connections."
The defendant suggests "respectfully" that this paragraph could be interpreted to mean that the six-month period before the defendant's reimbursement obligation is triggered commences when the fixtures ("gas-fired equipment") are installed rather than when the "mains, services, meters and connections" are installed. This argument is not without flaws. In the first place, the plain meaning of "such installation" as used is with reference to the antecedent "installing mains, services," etc. The subsequent use of "such mains, services" reaffirms the parallelism and expunges any ambiguity.
"The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity." Sturman v. Stocha, 191 Conn. 1, 11 (1983) (citations omitted). While it is true that contracts should be construed against the party who drafted them, "[t]his principle of contract construction . . . known as the contra preferentum rule . . . has no application if the contract term has only one reasonable interpretation and was definitely assented to by both parties." Eastern Bus Lines, Inc. v. Board of Education, 7 Conn. App. 581, 484 (1986).
For the foregoing reasons, the motion for summary judgment as to the issue of liability is granted, per Conn. Practice Book 385.
3. The Plaintiff Has Not Proven the Absence of Any Factual Issue as to the Measure of Damages.
"Where the language of a contract is clear and unambiguous, the contract is to be given effect according to its terms." Peragallo v. Sklat, 19 Conn. Sup. 510, 512 (1983) (citing, Leonard Concrete Pipe Co. v. C. W. Blakeslee Sons, Inc., 178 Conn. 594, 599 (1979)). It is clear that the agreement in this case contemplated a reimbursement of the plaintiff's costs if the real estate development did not proceed as planned. But, as to the parameters of this figure, and the mode of its calculation, the document is silent. CT Page 3175
 The intent of the parties to a contract cannot be found by implication unless a contrary intention cannot be supposed or any other inference made. The implication must be a necessary one and quite as obvious from the terms of the contract as though the intent implied was expressed in fact. Id., at 587-88 (citing Connecticut Co. v. Division 425, 147 Conn. 608. 621 (1960)).
To grant the motion for summary judgment on the record currently before the court, the court must assume that the parties intended to repose in the plaintiff the unilateral power to determine the amount of recovery. The invoices and other documents offered by the plaintiff, whether substantially accurate or not, do not as a matter of law, constitute evidence which a jury would not be at liberty to disbelieve. See, e.g., Batick v. Seymour, 186 Conn. 632, 647 (1982) quoting Sartor v. Arkansas Natural Gas Corporation, 321 U.S. 620, 644 (1944). As to the parties' intent regarding the measure of damages, "the determination of the intention of the parties is an inference of fact . . . ." Hanson Development Co. v. East Great Plains Shopping Center, Inc., 195 Conn. 60, 65 (1985). "Litigants have a constitutional right to have factual issues resolved by the jury. This right embraces the determination of damages when there is room for a reasonable difference of opinion among fairminded persons as to the amount that should be awarded." Mather v. Griffin Hospital, 207 Conn. 125, 138 (1988) (citation omitted). Thus, as to reliance on the plaintiff's unchallenged documentation, even without contradictory evidence, summary judgment on damages is inappropriate here. "That a fact was testified to and was not directly contradicted by another witness is wholly insufficient." Martin v. Kavanewsky, 157 Conn. 514, 515
(1969). The movant here "has the burden of establishing the credibility of his evidence to a degree calculated to induce a court to conclude that a trial would be a useless formality." Bauman, A Rationale of Summary Judgment, 33 Ind. L.D. 469, 529-30 (1958). Such a burden cannot be properly borne on the backs of documents which, however plausible, might readily be disregarded by a jury.
For the foregoing reasons, then, the motion for summary judgment on the issue of damages is denied. Such denial renders the request for prejudgment interest ipso jure unripe for decision at present.
DONALD T. DORSEY, JUDGE CT Page 3176