[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The court has reviewed the oral testimony and the full exhibits in these two cases, and has evaluated the credibility of the various witnesses.
A. BACKGROUND
The court will refer to these two cases, which were tried together, as the DiLeo case and the Morse case. Joseph Willis is the only defendant in the DiLeo case; he and 2nd New England Forestland Management are both defendants in the Morse case, but this trial was not against New England Forestland Management because there is a stay of any proceedings against that corporation because of a pending bankruptcy proceeding.
The Complaint in both cases sounds in negligence only, alleging various negligent acts and negligent failures to act. No Special Defense was filed in either case.
At the close of the evidence in both cases, the defendant moved for judgment of dismissal on the ground that there was no testimony of specific negligent acts committed by the defendant,
Joseph Willis, which harmed the plaintiffs. The defendant chose to offer no evidence in either case.
B. FACTS
The court finds the following facts:
1. On September 19, 1996, the plaintiff DiLeo entered into a CT Page 135 contract with 2nd New England Forestland Management Corporation whereby the corporation was to harvest wood and to clear and rough grade a road on DiLeo's property.
2. The Morse property adjoins the DiLeo property.
3. The defendant, Joseph Willis, signed for the corporation as its "President/Operations Manager
4. The contract further provided that the corporation, also known as the Purchaser, would cut and remove certain timber and would pay Mr. DiLeo $5,000 cash.
5. The contract also provided that the timber harvest will follow all Connecticut Water Quality and Timber Harvest Guidelines.
6. By telling Mr. DiLeo that he was the corporation's operations manager, the defendant inferentially, if not expressly, represented to him that he would be an active participant in the work to be performed under the contract. He was not just a corporate officer, but a hands on work manager, fully engaged in the work product. That is the common meaning of the words "operation manager," which were the exact words used by the defendant when he signed the contract.
7. In the beginning of the project the defendant was clearing the landing area with a bulldozer, and when Mr. DiLeo complained about that area being too big, the defendant said he needed to turn his trucks around up there. At one point during the work when Mr. DiLeo brought to the defendant's attention that the road was in the wrong place, the defendant said he wasn't finished yet and would remedy the error. These facts are a further indication that the defendant was an active participant in the work.
8. After the expiration of the time (November 30, 1996) by which the contract work was to be completed, the defendant came to Mr. DiLeo and offered to sign an Addendum to the original contract. This addendum, which was in writing and prepared by the defendant, listed many items to be completed by the defendant. Mr. DiLeo refused to sign this addendum because he was so dissatisfied with the defendant's work, he didn't want him working on his property any further. There was no valid reason for the defendant not to have completed his work by November 30, 1996. CT Page 136
9. In the performance of his work, the defendant failed to exercise the degree of care a skilled timber contractor of ordinary prudence would have exercised under the same or similar conditions, and did not conform that work to the Connecticut Water Quality and Timber Harvest Guidelines, as required by the contract. The landing area was too large, with unnecessary cutting and grading, resulting in an interruption in the natural flow of water; thereby causing an excessive amount of soil removal.
Reasonable care was not used to minimize erosion damage; water bars weren't properly installed, there was no effort to place siltation fences, hay bales or any appropriate measures to divert water and reduce erosion potential. The trees were not cut in accordance with reasonably careful harvesting, and the felled tops of trees were not adequately trimmed or lopped. Some topwood was hung up in adjoining trees, creating a safety hazard.
Part of the road was not laid out pursuant to the plans, and in part the grade exceeded the 10% called for in the contract.
Large piles of waste wood littered the property. The road was not mulched and seeded for stabilization. There were too many trees uprooted, and damage was caused to trees that were not intended to be harvested.
Because of erosion-caused loss of topsoil, soil will have to be brought in to stabilize the land.
Contrary to accepted practices in the industry, the defendant began the harvesting process in the front of the property, rather than in the back, thereby causing further damage.
Under all of these circumstances, the defendant should reasonably have anticipated that the harm caused was likely to result from his actions or failure to act.
10. With respect to the Morse property, the corporation's heavy equipment went on that property without the permission of the Morses, and the defendant failed to exercise reasonable care to avoid damaging the lawn and roadway, and further failed to repair the damage.
11. The plaintiff, Robert DiLeo, made no reasonable effort to minimize the erosion damage caused to his property, although a CT Page 137 small amount of extra effort at the end of the harvesting would have gone a long way to protect the soil and water resources. Whatever he did was minimal.
12. Evidence of the damages claimed by the plaintiffs was introduced through two witnesses, each of whom is a long time friend of Robert DiLeo. The court does not consider this evidence persuasive as to the total amount claimed. The amounts claimed were estimates.
13. The court finds that the defendant breached a duty to the plaintiff which was a proximate cause of the plaintiffs' damages.
C. DISCUSSION OF LEGAL ISSUES
1. Even though the defendant, Joseph Willis, did not sign the contract individually, he is personally responsible.
 Where, however an agent or officer commits or participates in the commission of a tort, whether or not he acts in behalf of his principal or corporation, he is liable to third persons injured thereby.
Scribner v. O'Brien, Inc., 169 Conn. 389, 404 (1975).
The court has found sufficient facts to conclude that the defendant committed or participated in tortious conduct resulting in damages to the plaintiffs.
2. The relationship between Robert DiLeo and the defendant arises out of the fact that they were parties to a contract, but these two lawsuits allege only negligence. "A duty to use care may arise from a contract. . . ." Coburn v. Lenox Homes, Inc.,186 Conn. 370, 375 (1982). The court finds that such a duty existed in this case. The court further finds that the defendant had a duty to use reasonable care under the circumstances then and there prevailing, and that he breached this common law duty of care.
These breaches of duty occurred as specified in paragraphs B. 9 and B. 10 of this Memorandum of Decision, supra.
3. The court has already found that Robert DiLeo failed to take reasonable steps to minimize his damages.
 It has long been a `"rule of general application that one who has been injured by the negligence of another must use reasonable care to promote recovery and prevent any aggravation or increase of the injuries."' Sette v. Dakis, 133 Conn. 55, 60 48 A.2d 271 (1946). When there are facts in evidence that indicate that a plaintiff may have failed to promote his recovery and do what a reasonably prudent person would be expected to do under the same circumstances, the court, when requested to do so, is obliged to charge on the duty to mitigate damages." Jancura v. Szwed, 176 Conn. 285, 288, 407 A.2d 961 (1978); see also Geer v. First National Supermarkets, Inc., 5 Conn. App. 175, 178, 497 a.2d 999 (1985).
Futterlieb v. Mr. Happy's Inc., 16 Conn. App. 497, 501 (1988).
D. CONCLUSION
The court concludes that the plaintiffs in both cases have proved by a fair preponderance of the evidence the essential elements of their complaint. Since this conclusion is based solely on evidence presented by the plaintiffs, it effectively disposes of the Defendant's Motion For Judgment of Dismissal, which is denied.
The court further concludes that the defendant in the DiLeo case is entitled to have the damages mitigated.
In the DiLeo case, the plaintiff is awarded damages against the defendant Joseph Willis in the amount of $9,500.00.
In the Morse case, the plaintiffs are awarded damages against the defendant Joseph Willis in the amount of $1,000.00.
Richard A. Walsh, J. CT Page 138