PEDER PEDERSEN, JR., ET AL. *v.* MISBAH VAHIDY
(13362)

PETERS, C. J., HEALEY, SHEA, COVELLO and HULL, Js.

Argued November 4, 1988—decision released January 3, 1989

*Wesley W. Horton,* with whom was *Alexandra Davis,* for the appellant (defendant).

*Kathryn A. Calibey,* for the appellee (named plaintiff).

SHEA, J. In this medical malpractice action a jury returned a verdict of $300,000 for the plaintiff Peder Pedersen, Jr.[1] After denial of his motion to set aside the verdict, the defendant, Misbah Vahidy, appealed from the judgment on the verdict claiming that the trial court had erred in (1) instructing the jury that the plaintiff had proved the specification of negligence that the

---

[1] The jury found for the defendant upon the claim of Susan Pedersen, the wife of Peder Pedersen, Jr., for loss of consortium pleaded in the second count of the complaint. Susan Pedersen has not appealed from the judgment. In this opinion Peder Pedersen, Jr., is referred to as the sole plaintiff. Our remand for a new trial does not affect the judgment for the defendant on the second count.

defendant had failed to obtain an informed consent to the surgery, and (2) failing to grant a mistrial or give curative instructions concerning remarks of the plaintiff's counsel during argument suggesting that the defendant should have produced other surgeons in the area to testify as expert witnesses. The defendant has raised the additional issue of whether the general verdict rule precludes review of the claimed error in the charge to the jury. We conclude that there was error in the charge and that the general verdict rule does not apply under the circumstances of this case. Accordingly, we remand the case for a new trial. We discuss the claim of improper argument only for the purpose of the new trial and conclude that the substance of the argument was not improper.

It is undisputed that the defendant, a general surgeon, on February 25, 1983, performed an operation to remove a lipoma from the left scalene area of the neck of the plaintiff and that in the course of this procedure the left upper trunk of his brachial plexus nerve was injured with resulting disability of the left arm and shoulder. The injury occurred when the defendant inadvertently transected a branch of the nerve with scissors during the operation.

I

Before reaching the issue of whether the trial court has erred in directing the jury to resolve the issue of informed consent against the defendant, we must consider whether the general verdict rule precludes review of this claim. Under the rule, where distinct causes of action or defenses have been pleaded, a general verdict, such as was rendered for the plaintiff in this case, imports that each cause or defense has been decided in favor of the prevailing party. *Finley* v. *Aetna Life & Casualty Co.,* 202 Conn. 190, 202, 520 A.2d 208 (1987). When, however, "a plaintiff submits to the jury

several different specifications of negligent conduct in support of a single cause of action for negligence, we have held that the general verdict rule does not apply." Id., 203. The complaint in this case included the claim of lack of informed consent as one of six specifications of negligence.[2] The plaintiff argues nevertheless, that this claim is a distinct cause of action separate from the other specifications of negligence. See *Lambert* v. *Stovell,* 205 Conn. 1, 6, 529 A.2d 710 (1987); *Logan* v. *Greenwich Hospital Assn.,* 191 Conn. 282, 289, 465 A.2d 294 (1983). We need not resolve this issue, however, because the defendant submitted to the court interrogatories directed to each of the specifications of negligence in the complaint, including the claim of lack of informed consent.[3] The court refused the request to use interrogatories and the defendant excepted to this ruling.

---

[2] The paragraph of the complaint setting forth the plaintiff's specifications of negligence is as follows:

"5. Said injuries and losses were caused by the carelessness and negligence of the defendant, Misbah Vahidy, in one or more of the following ways:

"a. in that he failed to identify and isolate the left brachial plexus nerve anatomically before removing the lipoma;

"b. in that he carelessly and negligently manipulated surgical instruments and/or used excessive force in the vicinity of the left brachial plexus nerve, during the course of this surgery;

"c. in that he allowed administration of a general anesthetic to the plaintiff, Peder Pedersen, Jr., when in the exercise of reasonable care, he should not have done so;

"d. in that he failed to have an assistant present during said surgery when in the exercise of reasonable care, he should have done so;

"e. in that he failed to take reasonable measures to protect the left brachial plexus nerve, when he should have known of its proximity to said lipoma, and thereby subjected the plaintiff to unnecessary harm;

"f. in that he failed to obtain the informed consent of the plaintiff to perform said removal of the lipoma, and did not warn the plaintiff of the potential hazards and dangers involved in such proceeding."

[3] The interrogatories requested by the defendant were as follows:

"1. Was the defendant, Misbah Vahidy, negligent in failing to identify and isolate the left brachial plexus nerve before removing the lipoma?

"2. Was the defendant, Misbah Vahidy, negligent in the manner in which

"A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury." *Finley* v. *Aetna Life & Casualty Co.,* supra, 203. It follows that where the court has denied a proper request for interrogatories, as in this case, the general verdict rule does not apply so as to preclude appellate review of error relating to any ground upon which the jury may have rested its verdict and to which an appropriate interrogatory has been directed.

The plaintiff does not on appeal maintain that the submission of interrogatories to the jury would have been inappropriate, but contends (1) that they were untimely, and (2) that the defendant cannot now claim error in the refusal to submit interrogatories because no such ground was relied upon in support of his motion to set aside the verdict.

With respect to timeliness, which the trial court mentioned as one ground for denying the use of interrogatories,[4] it appears that the defendant first made his

---

he manipulated the surgical instruments in the vicinity of the left brachial plexus nerve during the surgery to remove the lipoma?

"3. Was the defendant, Misbah Vahidy, negligent in using excessive force in the vicinity of the left brachial plexus nerve during the surgery to remove the lipoma?

"4. Was the defendant, Misbah Vahidy, negligent in allowing the administration of general anethesia to the plaintiff, Peder Pedersen?

"5. Was the defendant, Misbah Vahidy, negligent in failing to take reasonable measures to protect the left brachial plexus nerve during the surgery to remove the lipoma?

"6. Was the defendant, Misbah Vahidy, negligent in failing to obtain the plaintiff's informed consent to the surgery to remove the lipoma?"

[4] The trial court's ruling on the motion to submit interrogatories and the related colloquy were as follows:

"Mr. Huntsman: Your Honor, I would just, of course, note my exception to your Honor's ruling and secondly, in chambers we briefly discussed the question of the proposed jury interrogatories which were submitted.

"The Court: Mm hmm.

"Mr. Huntsman: I would just note for the record we believe in light of your Honor's action in taking one of the issues away from the jury that

request during a chambers conference prior to closing arguments. After the conference, the defendant filed the interrogatories in open court, stating that they would be helpful "in light of your Honor's action in taking one of the issues away from the jury." He referred to the court's denial of his request, and noted his exception.[5] The rules of practice do not specify when interrogatories should be filed. See Practice Book § 312. Since interrogatories normally must be explained to the jury in the charge, the time limit for filing requests to charge in Practice Book § 317,[6] "before the beginning of the arguments or at such earlier time during the trial as the court directs," is appropriate. This has been the usual practice. *Gaulton* v. *Reno Paint & Wallpaper Co.*, 177 Conn. 121, 412 A.2d 311 (1979). In this case the court never set any time limit for filing interrogatories or requests to charge. There is no basis for claiming untimeliness, therefore, because the interrogatories were filed within the time allowed by the rules of practice.

this would be of significant help to the Court or any Appellate Court in the future on this case and we believe these should be passed to the jury and that as I understand it, your Honor, your Honor is going to deny that and, therefore, please note our exception to your Honor's ruling.

"The Court: All right. Mr. Davis any comment.

"Mr. Davis: Yes, I have opposed them for two reasons, for their timeliness first and secondarily my understanding of interrogatories is that they are to request specific findings of fact from which a verdict can be predicated and that these are nothing more than the allegations of negligence set forth in the Complaint which the jury has in any event.

"The Court: I'd say from both points, the timeliness and that they're the ultimate finders of fact. I'm going to deny your submission for the admission of your interrogatories. An exception is noted.

"Mr. Huntsman: Thank you."

[5] See footnote 4, supra.

[6] "[Practice Book] Sec. 317.——FILING REQUESTS

"Written requests to charge the jury must be filed in triplicate and in writing with the clerk before the beginning of the arguments or at such earlier time during the trial as the court directs, and he shall file them and forthwith hand one copy to the court and one to opposing counsel."

"No verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action, stating the reasons relied upon in its support . . . ." General Statutes § 52-228b. We have construed the statute to preclude appellate review of claimed errors, when a party has failed to file a motion to set aside a verdict, except where review for "plain error" is called for under Practice Book § 4185.[7] *Small* v. *South Norwalk Savings Bank,* 205 Conn. 751, 758–59, 535 A.2d 1292 (1988); *Pietrorazio* v. *Santopietro,* 185 Conn. 510, 515–16, 441 A.2d 163 (1981). Section 52-228b requires not only that a motion to set aside a verdict be filed but that it state the "reasons relied upon." The Appellate Court has construed this provision to require that the claims of error to be relied upon for appeal be set forth in the motion to set aside the verdict and we agree with this view. *Finley* v. *Aetna Life & Casualty Co.,* 5 Conn. App. 394, 397, 499 A.2d 64 (1985), rev'd on other grounds, 202 Conn. 190, 520 A.2d 208 (1987).

The defendant in this case did file a motion to set aside the verdict[8] that included his claim that the court

---

[7] "[Practice Book] Sec. 4185. ERRORS CONSIDERED

"The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court.

"In jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving his objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same."

[8] The motion to set aside the verdict was as follows:

"The Defendant, Misbah Vahidy, M.D., hereby moves that the verdict rendered in favor of the Plaintiff, Peder Pedersen, after the trial of the above-captioned matter be set aside on the grounds that it is contrary to

had erroneously charged upon the informed consent specification of negligence, but his motion did not mention the refusal to submit his interrogatories. That omission, however, does not bar the defendant from plenary review of his claimed error, because in this appeal he does not claim that erroneous ruling as an independent ground for seeking a new trial but as a reason for not applying the general verdict rule to bar review of the charge upon informed consent. The refusal to submit interrogatories alone might not have been of such significance as to warrant a new trial if there had been no error in the charge. The defendant had no reason at the time he prepared his motion to set aside the verdict to anticipate that the general verdict rule would be invoked after he had made every reasonable effort to protect himself from the consequences of such a verdict by seeking to use interrogatories. The failure of his motion to mention the denial of this request for their submission cannot be relied upon to shield a patently erroneous application of the general verdict rule from review.

## II

At the close of evidence the plaintiff moved for a directed verdict in respect to liability upon the ground that several of his specifications of negligence had been proved as a matter of law. The trial court denied the motion except with respect to the claim of failure to

---

law in that the Court's instruction on negligence in the context of informed consent was erroneous and in that the Court failed to give a curative instruction to the jury regarding plaintiff counsel's remarks in closing argument regarding expert witnesses.

"In addition, the verdict must be set aside on the grounds that it is tainted as a result of the mention of insurance to members of the jury by a discharged alternate juror.

"In the alternative, the Defendant moves for a remittitur on the grounds that the verdict is excessive.

"WHEREFORE, the Defendant moves than an order be entered setting aside the verdict rendered in favor of the Plaintiff, Peder Pedersen."

obtain an informed consent to the operation. The court concluded that this specification of negligence had been established because of judicial admissions made by the defendant during his testimony. Because the issue of causation still presented factual issues, however, the court refused to direct a verdict on liability, but indicated that it would instruct the jury to find the lack of an informed consent. Later, the court charged the jurors that this specification of negligence "has been proven as a fact."[9] The defendant excepted to this portion of the charge.

The basis for the ruling that the defendant had judicially admitted his failure to obtain the informed consent of the plaintiff was the testimony of the defendant on cross-examination that in discussing the prospective removal of the limpoma he had never told the plaintiff that "one of the risks of doing this surgery is that

---

[9] This portion of the charge was as follows: "Now, the last matter, subparagraph f, the claim is that the defendant failed to obtain the informed consent of the plaintiff to perform said removal of the lipoma, and did not warn the plaintiff of the potential hazards and dangers involved in such proceeding.

"This is a matter which I have discussed with counsel and there was an argument made with respect to whether or not based upon the admission of Doctor Vahidy that he did not warn the plaintiff, Mr. Pedersen, that there would be a risk of a transection of the brachial plexus nerve, and on the basis of that, as I've indicated to you, it's my obligation as a Judge to make a determination as to whether this falls into a category which is known as a judicial admission which I have done so, and, therefore, I have found that based upon this evidence and this statement that was offered on the stand, that that fact has been proven and you may treat that as such. So that you may treat as a matter of fact, that the fifth specification of negligence has been proven as a fact. That does not mean that that is the total scope of the issue of liability because there's still the matter of proximate cause between the matter of informed consent and the ultimate liability. There must be a finding by you of proximate cause between these two issues. I want to make sure that you understand that I am directing you to find that subparagraph f has been proven. If you recall my earlier remarks, that there are certain matters which have been admitted. You may treat those as having been proven. This is a fact that you may treat as having been proven."

. . . your brachial plexus will be transected."[10] The defendant had previously testified, in response to the question whether an injury to the brachial plexus constituted a deviation from the standard of care for a general surgeon, that he did not think it was a deviation. He then added: "That is an associated risk of the surgery."[11] The defendant had already testified on direct examination that the potential complication involved in this type of surgery was "injury to underlying muscles, blood vessels and the nerves" and that he had explained the possibility of such injury to the plaintiff.[12]

"A judicial admission dispenses with the production of evidence by the opposing party as to the fact admit-

[10] [Mr. Davis]: Now, next on the situation of the risks. There is no question, is there, Doctor Vahidy, that at no point in time did you ever say to Mr. Pedersen one of the risks of doing this surgery is that I will or that your brachial plexus will be transected?

"A. No, I didn't."

[11] [Mr. Davis]: Now, Doctor Vahidy, do you have an opinion, based upon reasonable medical probability, as to whether during surgical removal of a lipoma located in the supraclavicular region where surgery is done in the manner described an injury to the brachial plexus constitutes a deviation from the standard of care for a general surgeon?

"A. I don't think it constitutes a deviation. That is an associated risk of the surgery.

"Q. What's the basis for your opinion?

"A. Because I did take care with whatever I could do and I did my best at the time of surgery not to injure any structures."

[12] "[Mr. Huntsman]: And could you describe for the jury how you described to Mr. Pedersen, how you described the mechanics of the surgery, the actual surgery itself?

"A. I explained to him briefly that the surgery involved making an incision in the lower part of the neck just on the swelling and the skin and the underlying platsyma muscle and then dissection of the mass from the underlying structures.

"Q. What are the potential complications which are involved in this type of surgery?

"A. Well, you can have injury to underlying muscles, blood vessels and the nerves.

"Q. What did you explain to Mr. Pedersen about the potential complications?

"A. I explained that there's a possibility of an injury to the muscles, blood vessels or nerves."

ted, and is conclusive upon the party making it." *King* v. *Spencer,* 115 Conn. 201, 204, 161 A. 103 (1932). "If a party, as a witness, unequivocally concedes a fact, such concession for the purposes of the trial has the force of a judicial admission . . . . Unless it amounts to such a stipulation or waiver as to have the force of a judicial admission, the testimony of a party to a fact is ordinarily no more conclusive upon him than the evidence given by any other witness; and it is the duty of the court or jury to determine the fact not alone from the testimony given by the party but from all the evidence in the case." *Kanopka* v. *Kanopka,* 113 Conn. 30, 39, 154 A. 144 (1931). "Where also the testimony of a party relates, not to a fact peculiarly within his own knowledge and as to which he could not be mistaken, but is in the nature of an estimate or opinion as to which he may honestly be mistaken, he does not unequivocally concede that the fact is in accord with the opinion expressed, and there is no injustice in permitting the court to consider the other evidence in the case, and determine from all the evidence what the actual facts are." *King* v. *Spencer,* supra, 205.

It is plain that the defendant's testimony that he never advised the plaintiff of any risk of injury to the brachial plexus entailed by the contemplated surgery is a judicial admission of that fact. It is not so clear that we should so regard his testimony, given in support of his response that an injury to the brachial plexus did not necessarily constitute a deviation from the standard of care, that such an injury was an "associated risk" of the surgery. If this statement of the defendant meant simply that there was a possibility of such an injury, it might qualify as a simple factual assertion "peculiarly within his own knowledge and as to which he could not be mistaken . . . ." Id. As the trial court interpreted the statement, however, it was given the effect of an incontrovertible concession that this risk

was of such a nature that the failure to warn specifically of it meant the lack of informed consent.

In our view the defendant's testimony cannot reasonably be construed to indicate that he intended to make such an admission. He had testified on direct examination that he had told the plaintiff that the operation to remove the lipoma would entail the possibility of "injury to underlying muscles, blood vessels and the nerves." The brachial plexus is a complex of nerves, like a telephone cable, controlling the arm. Presumably the defendant thought this warning was adequate. In referring to an injury to the brachial plexus as an "associated injury," it is not an inescapable conclusion, as the trial court assumed, that the defendant viewed such an injury as so great a risk that this nerve complex should be singled out for special mention. Even if this reference could reasonably be given the significance attributed to it by the court as an expression of the defendant's opinion of the likelihood of such an injury, we would view it as "in the nature of an estimate or opinion as to which [the witness] may honestly be mistaken . . . ." Id. As such an opinion it would have been at best an evidentiary admission, not carrying the conclusiveness of a judicial admission.

In *Logan* v. *Greenwich Hospital Assn.*, 191 Conn. 282, 292–93, 465 A.2d 294 (1983), for the purpose of determining claims of lack of informed consent, we adopted the "lay standard of disclosure . . . obligating the physician to provide the patient with that information which a reasonable patient would have found material for making a decision whether to embark upon a contemplated course of therapy." We held in that case that the trial court's instruction to the jury, that an alternative more hazardous than the surgical procedure performed was not a viable alternative and thus need not be disclosed to the patient, was erroneous, because it effectively limited a surgeon's duty in informing his

patient of alternatives to advising him of only the least hazardous procedure, even though there was evidence that other procedures were viable. This erroneous instruction, effectively removing from the jury the question whether a particular alternative should have been discussed with the patient, was the basis for our conclusion that a new trial was necessary.

Similarly, in the case before us, the instruction that the jury should find the defendant negligent for failure to obtain the plaintiff's informed consent removed from the jury the factual issue of whether the possibility of an injury to the brachial plexus was such a material risk of the surgery for removal of the lipoma that the defendant should have disclosed it under the lay standard for information reasonably needed by the patient in deciding whether to undergo surgery or treatment. We have noted that the cases on informed consent "require something less than a full disclosure of all information which may have some bearing, however remote, upon the patient's decision." *Logan* v. *Greenwich Hospital Assn.*, supra, 291; see *Canterbury* v. *Spence*, 464 F.2d 772, 786 (D.C. Cir.), cert. denied, 409 U.S. 1064, 93 S. Ct. 560, 34 L. Ed. 2d 518 (1972). It is not entirely clear that a possible consequence that, according to the testimony of one of the plaintiff's expert witnesses, "would never be permitted as a happenstance in the course of this operation" and could occur only where there had been a deviation from the acceptable standard for such surgery, should be disclosed to a patient. The defendant's testimony, relied upon by the court, that an injury to the brachial plexus was an "associated risk" of the surgery does not establish as a matter beyond reasonable controversy that the likelihood of such an injury was sufficiently great to require as a matter of law that the possibility of such an injury and its consequences be specifically disclosed to a patient.

Under the lay standard for determining whether there has been informed consent, the jurors as laypersons must be given great latitude to decide how much disclosure is sufficient. It is at least debatable whether a physician must disclose all possibilities that are reasonably foreseeable, like the consequences of deviations from the applicable standard of treatment that occur so infrequently as to be quite remote. The jury might reasonably have concluded that specific mention of the possibility of injury to the brachial plexus and its consequences would have been inappropriate in view of the testimony of the plaintiff's expert that such an injury occurs only when the surgeon has deviated from the applicable standard. For a physician to name specifically each bodily structure exposed to the possibility of injury because of its location near the site of the proposed surgery, when the likelihood of such injury is remote, may well be considered unnecessary and detrimental to the patient by overemphasizing the hazards of the operation, thus inducing the patient to refuse needed surgery. Such questions should be left to the factfinder.

We conclude that under the circumstances of this case the defendant's testimony that an injury to the brachial plexus was an "associated risk" of surgery for removal of the plaintiff's lipoma was not a judicial admission conclusively establishing that such a risk should have been disclosed to the plaintiff before his consent to the operation could be deemed informed. The trial court's contrary view and resulting instruction for the jury to find for the plaintiff on the informed consent specification of negligence was, therefore, erroneous.

## III

Having found error necessitating a remand for a new trial, we consider the defendant's claim of improper

argument only because the issue may again arise at such trial. During closing argument, counsel for the plaintiff commented[13] upon the failure of the defendant to have offered any expert testimony other than his own to support his claim that the injury to the brachial plexus did not necessarily constitute a deviation from the standard of care applicable to a general surgeon. He also referred to the availability of other general surgeons practicing in the area, some of whom had been mentioned specifically during the trial.

Counsel for the defendant objected immediately on the ground that a *"Secondino* type" of argument was improper.[14] The court overruled the objection and indicated that it would consider a request for a curative instruction.[15] At the conclusion of the plaintiff's argument the defendant moved for a mistrial. The court denied the motion.

We find nothing improper in the argument of plaintiff's counsel. It is basic that the merit of each party's presentation is to be evaluated not only in the light of

[13] This portion of the plaintiff's argument was as follows: "And again while the burden doesn't—the burden at all times rests upon the party who has the affirmative, to go forward with the evidence, let me just offer this for your consideration as well. If the damaging of that nerve did not constitute a deviation from accepted practices, that is, if it was a standard type of thing that could occur as the result of this procedure, or if it was something to hit this nerve, to bruise, contuse, or sever it was something using reasonable care could be accomplished, I submit to you that there would have been expert testimony offered in behalf of Doctor Vahidy in that regard. And you'll recall, I questioned him with reference to other general surgeons in Meriden-Wallingford, other general surgeons within the area."

[14] Counsel was referring to *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 674–76, 165 A.2d 598 (1960), where this court approved the rule permitting a negative inference to be drawn where a party failed to produce a witness available to him and whom he would "naturally" be expected to produce.

[15] No such instruction was given, but the defendant never submitted an appropriate request to charge. Because a new trial is necessary, we need not discuss whether the failure to give an appropriate instruction would constitute error.

the evidence he produces at trial but also in consideration of the evidence available to him that he would naturally be expected to produce if it were favorable to him. "It is an ancient maxim that all evidence is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other side to have contradicted." *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 674, 165 A.2d 598 (1960). The remarks to which the defendant objected are wholly in accord with this principle, as they were intended to highlight the fact that the defendant had presented no expert testimony other than his own upon the issue of whether he had deviated from the requisite standard of care. The defendant does not claim that there was insufficient evidence of the availability of the other surgeons in the area to whom reference was made.

The defendant also refers to *State* v. *Daniels*, 180 Conn. 101, 113, 429 A.2d 813 (1980), in which we indicated that, in criminal cases where either the state or the defendant intends to argue that an adverse inference should be drawn from the absence of a witness at trial, "an advance ruling from the trial court should be sought and obtained." He contends that this practice should be mandated in civil cases as well. We agree that such a procedure would be beneficial in reducing the frequency of claims of error involving references during argument to missing witnesses. We need not decide in this appeal under what circumstances the failure to obtain an advance ruling from the trial court would constitute prejudicial error warranting a new trial.

There is error, the judgment for the plaintiff is set aside and the case is remanded for a new trial.

In this opinion the other justices concurred.