[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On May 13, 1995, the plaintiff's son was killed when the cargo tank on which he was working exploded. The plaintiff brings this action claiming that the explosion was caused by the failure of the defendant, United Oil Recovery, Inc., the owner of the tank, to clean it before having work done on it. The defendant has moved for summary judgment on the basis that the action is preempted by the Federal Hazardous Materials Transportation Act,49 U.S.C. § 5101, et seq. and the regulations promulgated pursuant to that Act. The motion is denied.
The plaintiff, Paul Clogher, administrator of the estate of Michael Clogher, brings this wrongful death action. He alleges that his son, Paul, worked for Connecticut Tank and Trailer Repair, Inc. (CTTR).[1] The business of CTTR is the repair and testing for leaks of chemical hauling trailers. The defendant United Oil Company is in the business of hauling chemicals and oil, as well as chemical and petroleum wastes. CT Page 6044
On May 13, 1995, the plaintiff's decedent was engaged in the testing and repair of a tank trailer owned by the defendant when it suddenly exploded resulting in his death. In paragraphs 9 and 10 of each count of his complaint, the plaintiff alleges: "9. The defendant had a duty reasonably to clean said trailer prior to its delivery to Connecticut Tank Trailer Repair, so as to eliminate flammable and explosive substances, fumes, or residues from the interior of the tank trailer, and thereby deliver the tank trailer in a condition reasonably safe for testing and repair work. 10. The defendant was further required by Connecticut Tank and Trailer Repair to deliver said tank trailer in reasonably clean and safe condition for testing and repair work." The plaintiff alleges that the decedent's death was caused by the negligence of the defendant in failing to adequately clean its tank trailer of flammable and explosive substances, fumes or residues from the interior of the tank trailer when it knew or should have known that the plaintiff's decedent would likely engage in welding or other flame or spark-producing activity at or near the tank trailer during the course of its testing and repair.
The first count of the complaint sounds in negligence. The second count alleges recklessness. The third count seeks "a permanent injunction against the defendant, prohibiting the defendant . . . from ever again delivering for testing and repair another of its tank trailers without previously cleaning it adequately to avoid hazard to those who would work on the trailer."
The affidavits and admissions of CTTR submitted by the parties establish that the defendant had used CTTR's services in the past to test, clean, repair and certify its tank trailers. On March 10, 1995, the defendant avers that it delivered a tank trailer to CTTR to be retested. The plaintiff claims by way of affidavits from CTTR principals that the tank was delivered to CTTR by the defendant for external visual inspection and for leak testing, as required annually by the United States Department of Transportation. The tank trailer had been "hosed out," but not cleaned.
 I
For over 125 years, Congress has repeatedly addressed the question of transportation of hazardous materials. The first step CT Page 6045 was the 1871 act, 46 U.S.C. § 170, which limited the transportation of explosives. Over the next century, there arose piecemeal a broad program of regulation and control. S. Report No. 93-113, Transportation Safety Act of 1974, 93rd Congress, 2d Session, pp. 6-7 (Sept. 30, 1974).
In 1970, in response to mounting losses of life and property from railroad accidents, the Congress passed the Federal Railroad Safety Act of 1970. The purpose of that law was to promote safety in all aspects of rail service operations in the United States. The record of rail safety following the act did not bear out the hope of the Congress. S. Report No. 93-113, Transportation Safety Act of 1974, 93rd Congress, 2d Session, p. 9 (Sept. 30, 1974). "Despite enactment of the 1970 statute, in 1973 rail accidents reached a 16 year high and increased by 24% over the number of accidents in 1972. The statistics [were] grim: 1,913 dead, and 17,718 injured. The casualty rate increased by 11.3% over this period." Federal Railroad Safety and Hazardous Materials Transportation Amendments of 1974, H.R. Rep. Report No. 93-1083, 93rd Congress, 2d Session, p. 3 (June 6, 1974). In a study reported in 1974, seventy — two tank cars ruptured between 1958 and 1971; during the same time period, there were a total of 28 accidents and 64 tank cars ruptured violently. This was characterized by a House of Representatives Subcommittee Report as "a very small sample." (Transportation of Hazardous Material: Hearings before a Subcommittee of the Committee on Government Operations of the House of Representatives, 92nd Congress, 1st
and 2nd Sess., pp. 68-69, 163 (November 17, 1971).) In Crescent City, Illinois and Laurel, Mississippi there were catastrophes resulting in loss of life, dozens of serious injuries and destruction of residences.[2]
The 1974 Transportation of Hazardous Material Act, 49 U.S.C. § 5101
et seq. [HMTA], addressed a litany of subjects implicated by the transportation of hazardous materials, with particular emphasis and comprehensive treatment of identification, labeling and packaging of hazardous materials; 49 C.F.R. § 172.1 et seq.,178.1 et seq.; including regulations for the maintenance, reconditioning, repair, inspection and testing of cargo tanks and other packagings; 49 C.F.R. § 180.1 et seq.; preparation and shipping of hazardous materials; 49 C.F.R. § 173.1 et seq.; special provisions for carriage by rail; 49 C.F.R. § 174.1 et seq.; by aircraft; 49 C.F.R. § 175.1 et seq.; by vessel;49 C.F.R. § 176.1 et seq.; and by public highway.49 C.F.R. § 177.800 et seq. The regulations also contained detailed CT Page 6046 specifications for tank cars. 49 C.F.R. § 179.1 et seq. "The purpose of [the Transportation of Hazardous Material Act] is to provide adequate protection against the risks to life and property inherent in the transportation of hazardous material in commerce by improving the regulatory and enforcement authority of the Secretary of Transportation." 49 U.S.C. § 5101.
 II A.
The defendant claims that the plaintiff's action is preempted by the Federal Hazardous Materials Transportation Act, 49 U.S.C. § 5101, et seq., or by the regulations promulgated thereunder.
"Article VI of the Constitution provides that the laws of the United States shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding. Art. VI, cl. 2. Thus, since [the United States Supreme Court] decision in M'Culloch v. Maryland, 4 Wheat. 316, 427 (1819), it has been settled that state law that conflicts with federal law is `without effect.' Maryland v. Louisiana,451 U.S. 725, 746 (1981). Consideration of issues arising under the Supremacy Clause `start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.' Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230
(1947). Accordingly, `"[t]he purpose of Congress is the ultimate touchstone'" of preemption analysis. Malone v. White Motor Corp. ,435 U.S. 497, 504 (1978) (quoting Retail Clerks v. Schermerhorn,375 U.S. 96, 103 (1963))." Cipollone v. Liggett Group, Inc.,505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).
"As a result, any understanding of the scope of a pre-emption statute must rest primarily on a fair understanding of congressional purpose. . . . Congress' intent, of course, primarily is discerned from the language of the pre-emption statute and the statutory framework surrounding it. . . . Also relevant, however, is the structure and purpose of the statute as a whole . . . as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." Medtronic,Inc. v. Lohr, 518 U.S. 4701 485-86 (1996). CT Page 6047
"Congress' intent may be `explicitly stated in the statute's language or implicitly contained in its structure and purpose.'Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977). . . ."Cipollone v. Liggett Group, Inc., supra, 505 U.S. 516. "When Congress has considered the issue of preemption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority . . . there is no need to infer congressional intent to preempt state laws from the substantive provisions of the legislation. . . ." (Citations omitted; internal quotation marks omitted.) Id., 517. Such is the case with the Hazardous Materials Transportation Act. The extent to which Congress intended to preempt state law is expressly stated in the Act itself, at 49 U.S.C. § 5125
("Preemption"). "Therefore, we need only identify the domain expressly preempted by" the Act itself. Ibid.
 B.
Subsection "a" of 49 U.S.C. § 5125 provides, with certain exceptions not claimed to be applicable here, that "a requirement of a State . . . is preempted if (1) complying with a requirement of the State . . . and a requirement of this chapter [49 U.S.C. § 5101
et seq.] or a regulation prescribed under this chapter is not possible; or (2) the requirement of the State . . . as applied or enforced, is an obstacle to accomplishing and carrying out this chapter . . . or a regulation prescribed under this chapter. . . ."
Subsection "b" of 49 U.S.C. § 5125 provides, with certain exceptions not claimed to be applicable here, that "a law, regulation, order, or other requirement of a State . . . about any of the following subjects that is not substantively the same as a provision of this chapter . . . or a regulation prescribed under this chapter is preempted: . . . (E) the . . . repairing, or testing of a packaging or a container represented, marked, certified, or sold as qualified for use in transporting hazardous material."[3]
Common law tort actions for damages may impose "requirements" of a state. Cipollone v. Liggett Group, Inc., supra,505 U.S. 522.
 III
CT Page 6048
The court first examines the Act itself to determine whether there is any requirement in it pertaining to the cleaning of tank trailers. The defendant has cited no section of the Act imposing any requirement with respect to the cleaning of trailers, nor has the court's examination revealed any. The defendant does cite49 U.S.C. § 5103. This section, however, does not impose any such requirement but, rather, authorizes the Secretary of Transportation to "prescribe regulations for the safe transportation of hazardous materials. . . ." 49 U.S.C. § 5103
(b). Congress has provided that such regulations "apply to a person . . . reconditioning, repairing, or testing a packaging or a container that is represented, marked, certified, or sold by that person as qualified for use in transporting hazardous material in commerce. . . ." But the statute itself does not impose obligations on any person other than on the Secretary. For this reason, it cannot be said that "complying with a requirement" sought to be imposed by this common law tort action and complying with a requirement of the Act "is not possible," or that the former "is an obstacle to accomplishing and carrying out this chapter. . . ."
 IV
Next, the defendant points to a regulation promulgated by the Secretary, 49 C.F.R. § 180.413 (b)(2) (revised as of October 1, 1994), which it claims preempts this action. At the time of the incident here, 49 C.F.R. § 180.413 (b)(2) provided: "Prior to any repair work or modification the cargo tank must be emptied of any hazardous material lading. Cargo tanks containing flammable or toxic lading must be purged." The defendant argues that this regulation imposes an obligaition on the repairer of the tank, here, CTTR, to clean it before performing the repair, and that the obligation that cannot be assigned to the tank's owner. The plaintiff disagrees.
First, the plaintiff argues that the defendant "has offered no evidence that repairs on the subject tanker were in any way contemplated, scheduled or underway at the time of the incident which killed the plaintiff's decedent." It is true that the affidavit the defendant's president, submitted in support of the motion, states: "On March 10, 1995, United Oil Recovery, Inc. delivered a tank trailer to CT Tank to be `retested.'" Also, the affidavit of CTTR's Quality Control Manager and another affidavit of one of its shareholders states that the tanker was delivered by the defendant to CTTR "for the performance of an external CT Page 6049 visual inspection and for leak testing. . . ." However, paragraph 7 of the plaintiff's complaint states: "On March 13, 1995, at or about 11 a.m., the plaintiff's decedent was engaged in the testing and repair of a tank trailer owned by the defendant, which had been delivered to the defendant [sic] on or about March 10, 1995." (Emphasis added.) In supplemental oral argument, the plaintiff admitted that this was a judicial admission.
"[A] judicial admission is [an] express waiver, made in court or preparatory to trial, by the party or his attorney, conceding for the purposes of the trial the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted; so that one party need offer no evidence to prove it, and the other is not allowed to disprove it . . . . It is, in truth, a substitute for evidence, in that it does away with the need for evidence." (Internal quotation marks omitted.) State v. Rodriguez, 180 Conn. 382, 396, 429 A.2d 919
(1980); see State v. Jones, 50 Conn. App. 338, 352, 718 A.2d 470
(1998); Futterleib v. Mr. Happy's, Inc., 16 Conn. App. 497, 504,548 A.2d 728 (1988). A judicial admission is conclusive on the party making it. Pedersen v. Vahidy, 209 Conn. 510, 519,552 A.2d 419 (1989). "A party is bound by a judicial admission unless the court, in the exercise of its discretion, permits the admission to be withdrawn, explained or modified. . . ." (Citations omitted.) United Electrical Contractors, Inc. v. Progress Bldrs.,26 Conn. App. 749, 753-54, 603 A.2d 1190 (1992).
Subsequent to oral argument on this motion, the plaintiff did request leave to amend his complaint, operative since May 25, 1995, to delete the reference to repair.[4] This would, if allowed, render the reference to "repair" in the existing complaint an evidentiary admission only; Dreir v. Upjohn Co.,196 Conn. 242, 244-49, 492 A.2d 164 (1985); and would effectively moot this motion. Pursuant to Practice Book § 10-60, however, the defendant has fifteen days to object to this proposed amended complaint. The court certainly would prefer to "delay its decision . . . in the interests of practicality and so as not to `simply set judicial wheels unnecessarily spinning, only to remain at the same end of the road.' Chomko v. Patmon,20 Conn. App. 159, 163, 565 A.2d 250 (1989). In such scheduling matters, it is not improper for courts to be practical. Cf. State v. One 1976 Chevrolet Van, 19 Conn. App. 195, 202, 562 A.2d 62 (1989)."Somers Mill Associates v. Fuss O'Neill, Superior Court, judicial district of New Haven, No. 386670 (Nov. 13, 1998) Nevertheless, the case is scheduled for May 24, 1999, a decision CT Page 6050 on the instant motion must be made expeditiously,[5] and that decision must be based on the operative complaint.
The court agrees that the statement in paragraph seven of the complaint is a judicial admission and accepts the plaintiff's concession, for purposes of this motion, that it is an admission that CTTR was engaged in the repair, as well as the testing, of the tanker. See Johnson v. Fuller, 190 Conn. 552, 558,461 A.2d 988 (1983); see also Bower v. Donofrio, 38 Conn. App. 685,705-06, 663 A.2d 1061, cert. denied, 235 Conn. 911, 665 A.2d 606
(1995) (error for trial court not to accept judicial admission).
 V
The plaintiff, nonetheless, argues that nothing in49 C.F.R. § 180.413 "says, or even suggests, that a registered repair facility may not delegate the duty to clean or degas a cargo tanker trailer."
Section 180.413(a) (revised as of October 1, 1994), provided, with certain exceptions not claimed to be applicable here, that "[a]ny repair . . . of a cargo tank must be performed in conformance with the requirements of this section. . . . [T]he repair . . . must be performed by: (1) A cargo tank manufacturer holding a valid ASME Certificate of Authorization . . . or (2) A repair facility holding a valid National Board Certificate authorizing the use of the `R' stamp and registered in accordance with subpart F of part 107 of subchapter A of this chapter." Subparagraph (b) of 49 C.F.R. § 180.413 prescribes the manner in which cargo tanks are to be repaired. Most of these provisions, including § 180.413(b)(2), prescribe how something "must" be done. For purposes of these regulations, "must," like "shall," is used in the imperative sense; 49 C.F.R. § 171.9 (2); and imposes an enforceable duty. State v. Cala, 20 Ohio Ops. 400, 35 N.E.2d 758, 761 (Ct.App. 1940). "An imperative statutory rule is one that protects an interest vital to the public order and applies to all parties uniformly and cannot be set aside by contract."Towne Center, Ltd. v. Keyworth, 618 So.2d 467, 470 (La.App. 1993).
The question is whether 49 C.F.R. § 180.413 (b)(2) mandates that a cargo tank repairer must himself first empty the tank of any hazardous material lading and purge the tank of flammable or toxic lading, or whether it may delegate or assign such emptying and purging to another entity, specifically to the owner. Section CT Page 6051 180.413(b)(2) "does not itself answer this question, for it speaks only in the passive voice. . . ." E. I. du Pont de Nemours Co. v. Train, 430 U.S. 112, 128 (1977). "When Congress [or an agency] writes a statute in the passive voice, it often fails to indicate who must take a required action. The silence can make the meaning of a statute somewhat difficult to ascertain. . . ." (Citations omitted.) United States v. Wilson, 503 U.S. 329,334-445 (1992).
The plaintiff points to other provisions of 49 C.F.R. § 180.413
which were not drafted in the passive voice and which identify the person who must perform a function. For example, the plaintiff observes that 49 C.F.R. § 180.413 (b)(5) expressly provides that "[e]ach owner of a cargo tank must retain at its principal place of business all records of repairs or modifications made to each tank during the time the tank is in service and for one year thereafter." Where the legislating authority uses different language in different sections of the statute, it does so intentionally, and courts are obligated to give effect to that choice. Russello v. United States,464 U.S. 16, 23, 104 S.Ct. 296, 300-301, 78 L.Ed.2d 17 (1983); CabellHuntington Hospital, Inc. v. Shalala, 101 F.3d 984, 988 (4th Cir. 1996); Florida Public Telecommunications Assn., Inc. v. F.C.C.,54 F.3d 857, 860 (D.C. Cir. 1995); United States v. Barial,31 F.3d 216, 218 (4th Cir. 1994). However, the United States Supreme Court has observed that a lawmaker's use of the passive voice in a statute "strikes us as a rather slim ground for presuming an intention" of the lawmaker. United States v. Wilson,
supra, 503 U.S. 336.[6] We turn, then, to more reliable guides.
Regulations, like statutes, are interpreted according to the canons of construction. Black Decker Corp. v. C.I.R.,986 F.2d 60, 65 (4th Cir. 1993). The court's task is to interpret the regulation as a whole, in light of the overall regulatory scheme, and not to give force to one phrase in isolation. Jay v. Boyd,351 U.S. 345, 360, 76 S.Ct. 919, 100 L.Ed. 1242 (1956); seeGrammatico v. United States, 109 F.3d 1198, 1204 (7th Cir. 1997)Campesinos Unidos, Inc. v. Department of Labor, 803 F.2d 1063,1069 (9th Cir. 1996). In interpreting statutes and regulations, courts must try to give to give them a harmonious, comprehensive meaning, giving effect, when possible, to all provisions. McCuinv. Secretary, Housing Human Services, 817 F.2d 161, 168 (1st
Cir. 1987).
Section 180.413 is in Subchapter C. Part 171 of Subchapter C CT Page 6052 is entitled "General Information, Regulations and Definitions." Section 171.2(e) of Title 49 of the Code of Federal Regulations provides: "When a person performs a function covered by or having an effect on a specification prescribed in part 178, 179 or 180 of this subchapter, or an exemption issued under subpart B of this chapter, that person must perform the function in accordance with that specification, approval, or exemption, as appropriate." See also 49 C.F.R. § 180.2 (a) ("Any person who performs a function prescribed in this part shall perform that function in accordance with this part.")
Culling out the phrase "that person must perform the function" in 49 C.F.R. § 171.2 (e) would support the defendant's position that a repair of a cargo tank has a nondelegable duty to clean and purge the tank before making repairs. This, however, would do violence to the principle that written laws are to be construed as a whole. The thrust of 49 C.F.R. § 171.2 (e) is not to assign functions to any particular person but to mandate that whoever performs a specified function must perform it as the regulations prescribe. For purposes of this motion and the issue it presents, § 171.2(e) begs the question.
The court has examined the text of the Transportation of Hazardous Materials Act, its legislative history, and the regulations, much of which received limited treatment in the parties' briefs. "Although HMTA, as further amended in 1990 and 1994, established some uniform standards in the interstate transportation of hazardous materials, the Act does not, by its terms, exclude all state participation in the regulation of hazardous waste being carried within that state's borders. . . ." (Citations omitted.) Commonwealth of Mass. v. U.S. Dept. ofTransportation, 93 F.3d 890, 891 (1st Cir. 1996). Here, neither the text of the Act, the regulations, their structure or the available legislative history suggests that the person undertaking to repair a cargo tank, pursuant to49 C.F.R. § 180.413, must personally empty the tank of all hazardous materials and purge it of flammable or toxic lading. Nor is there evidence in the Act, the regulations or the legislative history that the repairer may not delegate or contract this function out to a third party. If such a function may be delegated to a third party, it would exalt form over substance to infer an intent to prohibit an arrangement in which the repairer could not require the owner of the tank to undertake the task of cleaning and purging before repairs were made. "The exaltation of form over substance is to be avoided." United States v. Difrancesco,
CT Page 6053449 U.S. 117, 142 (1980). While the instant case seems to demonstrate the hazards in such a delegation, the Act and the regulations penalize only violations of the law committed "knowingly."49 U.S.C. § 5123, 5124; 49 C.F.R. § 107.307 (a). Thus, mistaken but good faith reliance by a repairer on a commitment to it by another party to clean and purge a cargo tank would not expose the repairer to criminal or civil penalties.
Since neither the Act nor the regulations prohibit a cargo tank repairer from delegating to a third person the duty to clean and purge the tank prior to making repairs or from entering into an agreement with the owner to do so, there is no basis for the defendant's claim of preemption.
The motion for summary judgment is denied.[7]
BY THE COURT
Bruce L. LevinJudge of the Superior Court.